**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JACK J. NICHOLS<br>*Plaintiff* | § § § § § § | |
| | § | Case No. _____ |
| KEVAN CASEY and<br>TABITAH MARIE CASEY as<br>administrator for The ESTATE<br>OF KEVAN CASEY<br>*Defendant* | § § § § § § | JURY TRIAL REQUESTED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES JUDGE:**

COMES NOW, Jack J. Nichols, Plaintiff, and files this Original Complaint complaining of Defendants, Kevan Casey and the Estate of Kevan Casey (collectively "Defendant" or "Casey"), and would respectfully show the Court the following:

**I. PARTIES**

1.      Plaintiff Jack J. Nichols is a resident of Harris County, Texas, and can be served by and through his counsel of record.

2.      Defendant Kevan Casey is an individual residing in Harris County, Texas, who may be served at his residence of 11748 Skene Way, Houston, Texas 77024. Kevan Casey may or may not be deceased. The fact pattern of Kevan Casey's alleged death follows, with shocking similarities, the fact patterns of Larry Michael Nixon, Butch Ballow, Aubrey Lee Price, and other

1

famous securities fraudsters who avoid SEC liability by "dying" or fleeing the jurisdiction.[1] Plaintiff does not concede Casey's death and urges caution to the Court, the public, and all other creditors and interested persons.

3.      Defendant Tabitha Marie Casey is the administrator of the Estate of Kevan Casey (Harris County Probate Court No. 3; Cause No. 528971) and is sued only in her capacity as administrator of the estate. Ms. Casey can be served at her last known address of 11748 Skene Way, Houston, Texas 77024.

## II. JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action because of a federal question under 42 U.S.C. § 1983.

5.      Venue is proper in this Court because Defendants are located and reside in the Southern District of Texas (Harris and Brazoria Counties).

## III. FACTUAL BACKGROUND

6.      Pump-and-dump securities fraud schemes are prevalent in Texas, as evidenced by recent enforcement actions, including *Securities and Exchange Commission v. Kevan Casey et al*., No. 4:24-cv-02971 (S.D. Tex. filed Aug. 9, 2024), which alleges that Casey orchestrated a multi-

---

[1] The Fraudster Who Faked His Own Death, FED. BUREAU INVESTIGATION (Dec. 18, 2014), https://www.fbi.gov/news/stories/the-fraudster-who-faked-his-own-death. fbi.gov ; Money Manager Gets 10-Year Term After Faking Death in Plane Crash, NBC NEWS (Oct. 7, 2010), https://www.nbcnews.com/id/wbna39562817. nbcnews.com; U.S. fund manager accused of faking own death is convicted of fraud, REUTERS (Dec. 4, 2015), https://www.reuters.com/article/breakingviews/us-fund-manager-accused-of-faking-own-death-is-convicted-of-fraud-idUSKBN0TN2LR/. reuters.com Update - Fake-death boater snared in bank fraud, SOUNDINGS ONLINE (Apr. 28, 2005), https://soundingsonline.com/news/update-fake-death-boater-snared-in-bank-fraud/. soundingsonline.com

year microcap fraud scheme involving the secret accumulation and manipulation of shares in multiple publicly traded companies, resulting in over $56 million in illicit gains since at least 2018.

7.     These pump-and-dumps are apparently a problem in Texas.  Jimmy Gale Watson of Dallas just got busted.[2]  *See also* the stories of Perry "PJ" Matlock, 38, of The Woodlands, Texas; John Rybarczyk, 32, of Spring, Texas;[3] Carolyn Price Austin, 67, Andrew Ian Farmer, 43, Thomas Galen Massey, 51, Eddie Douglas Austin Jr., 71, and Charles Earl Grob, 41, all also of Houston; John David Brotherton, 62, League City. [4]

8.     Casey, a seasoned orchestrator of such pump-and-dump schemes (including one targeting LuxeYard, Inc. ("LuxeYard") back in 2012 that led to extensive federal and state litigation) has engaged in serial lawfare against his victims and their counsel to silence exposure of his fraudulent activities. This pattern of abuse, driven by ongoing SEC investigations and potential criminal exposure, provided Casey with clear motive to act maliciously against Plaintiff.

9.     The events culminating in the deprivation of Plaintiff's constitutional rights stem from Casey's involvement in litigation which grew out of his 2012 LuxeYard pump-and-dump.  In February 2022, Plaintiff Nichols represented Alidad Mireskandari[5] in a declaratory judgment action in Harris County Court (*Mireskandari v. Jinsun, LLC*, Cause No. 1181704) (the "Jinsun Case"), challenging Jinsun, LLC—a single-member entity controlled by Casey—as to the amount

---

[2] Federal Court Orders Texas Man to Pay Over $290,000 for Manipulative and Deceptive Digital Asset Pump-and-Dump Scheme, COMMODITY FUTURES TRADING COMMISSION (July 18, 2022), https://www.cftc.gov/PressRoom/PressReleases/8558-22.
cftc.gov
[3] Social media stock influencers accused of $114M 'pump and dump' scheme, ABC NEWS (Dec. 14, 2022), https://abcnews.go.com/Business/social-media-stock-influencers-accused-114m-pump-dump/story?id=95285011.
abcnews.go.com
[4] Several Sentenced in $50M Pump-and-Dump Scheme, U.S. ATTY.'S OFFICE, S. DIST. TEX. (Dec. 13, 2021), https://www.justice.gov/usao-sdtx/pr/several-sentenced-50m-pump-and-dump-scheme.
justice.gov
[5] Not to be confused with Amir Mireskandari, the Defendant in the "Dallas Case."  These are two separate persons and two entirely separate cases, except for Casey's involvement in both.

owed under a prior settlement tied to the 2012 LuxeYard litigation.  The Jinsun Case pleadings and subsequent appeal brief detailed Casey's historical and ongoing involvement in pump-and-dump schemes, including those involving Rapid Therapeutic Science Laboratories, Inc. (RTSL) and Wang & Lee Group, Inc. (WLGS), citing publicly available sources and prior court rulings.

10.     The county court granted summary judgment for Alidad Mireskandari on March 7, 2023. Casey, through Jinsun, LLC, appealed.  On July 24, 2023, Plaintiff Nichols e-filed and signed Alidad Mireskandari's appellee brief in the 14th Court of Appeals, which reiterated the factual background of Casey's schemes for contextual relevance to the settlement dispute and to counter Casey's character attacks in his counterclaim.

11.     Casey, fearing further scrutiny amid an active SEC investigation into RTSL (which had recently been interviewing a Casey associate), retaliated against Nichols. On August 9, 2023 Casey caused his attorneys to file in a separate Dallas County proceeding (*Casey v. Mireskandari*) (the "Dallas Case")[6] an application for show-cause order alleging contempt of a prior injunction, supported by false affidavits lacking any probable cause. These false affidavits falsely attributed sole authorship and knowledge of the Jinsun brief's contents to Nichols, ignoring that the brief was filed on behalf of a client and grounded in adjudicated facts in public records.  Casey, as principal, supplied or ratified the false information, fully aware of its falsity.

12.     The show-cause application resulted in a contempt hearing for February 27, 2024, in Dallas before Judge Martin Hoffman.  Nichols attended the hearing to defend against the baseless contempt allegations and false affidavit.  Upon arrival, Nichols and Amir Mireskandari were immediately seized, arrested, and detained by court security without Miranda warnings or

---

[6] This case in Dallas involved Alidad's brother, Amir Mireskandari.  These cases are not connected except for they involve Casey and grew out of the 2012 pump-and-dump litigation and settlements from that litigation.  This matter is referred to as the "Dallas Case".  Nichols, a non-party in the Dallas Case, was technically an attorney of record in the Dallas Case but had no significant role.

any advisement of rights. They were objectively and subjectively not free to leave. Nichols and Mireskandari were separated from their counsel and observers, forcibly relocated to a designated area in the courtroom flanked by two uniformed deputies armed with badges and firearms, and treated as presumptively guilty prisoners on display for the gallery of attorneys and spectators.

13.    Defendant's conduct mirrors the liability found in *Guerra v. Castillo*. Defendant did not simply report a crime; he fabricated the 'crime' (contempt) via false affidavits and then actively managed the state's response by coordinating the logistics of the seizure. Defendant effectively usurped the role of prosecutor.

14.    Casey intended that the show-cause application and affidavits would cause, or would likely cause an arrest of Nichols and Mireskandari.

15.    Casey arranged for the arrest and the additional security officer to be present at Court that day to seize Nichols and Mireskandari.

16.    Casey instructed the state actors to arrest Plaintiff.    This was a pre-arranged agreement that deviated from normal court security procedure.

17.    Casey aided and abetted state actors in the unlawful arrest of Plaintiff and the deprivation of other rights as described in more detail below.

18.    Casey also conspired with law enforcement prior to the hearing to set up the arrest by giving them instructions and false affidavits to trigger the arrest

19.    Casey therefore corrupted the independent judgment of the bailiffs. The "show cause" order was not an arrest warrant. In the absence of a valid arrest warrant, the bailiffs' act of seizing Nichols was entirely predicated on the acts of Casey, including his falsehoods and directives. Casey provided the *sole* basis and impetus for the warrantless seizure which would not have occurred but-for Casey's actions.

20.     Casey communicated to the clerks of court and other court administration.  He communicated a filing with false statements to them directly.  Other arrangements were made via Casey and his agents to arrange for additional bailiffs to be present at the hearing to arrest Nichols and his client.  This is also an atypical pre-arranged agreement.

21.     Casey and the state actors reached a corrupt meeting of the minds to detain Plaintiff *before* any judicial order was issued.  This agreement is evidenced by the fact that deputies seized Plaintiff immediately upon entry, prior to the case being called, prior to any contempt finding, and prior to any instruction from the presiding judge on the records.  The deputies were not acting on a judge's command, but on the pre-arranged instructions of the Defendant.

22.     By setting up the arrest, Casey ensured that both Nichols and Mireskandari would be without counsel during the hearing.  This would deprive them of a meaningful defense and counsel at a critical stage.

23.     Throughout the hearing, a critical stage involving potential liberty deprivation, Plaintiff Nichols was denied meaningful access to counsel in violation of the Sixth Amendment. He could not confer privately with his attorneys regarding live testimony, projected exhibits (which were positioned behind him, obstructing his view), or strategy, materially impairing cross-examination of Casey's witnesses.  Deputies guarded Nichols continuously, preventing unmonitored movement.  During a recess, while others moved about freely, Nichols remained detained. Only after intervention by Senator Royce West[7] was a partial release negotiated, allowing escorted conferral in an open-door witness room under deputy guard, enabling eavesdropping by deputies and Casey's agents.

---

[7] Senator West appeared as an attorney for Amir Mireskandari.

24.     To use the restroom during the break, Nichols was subjected to a warrantless pat-down search of his person in the presence of opposing counsel and spectators, including Casey acting as de facto prosecutor and his agent-attorneys.  This was not based on any order or ruling of the judge, and was clearly pre-arranged.  Nichols's pockets were emptied.  He had to remove his wallet, cell phone, and keys.

25.     Without any order or warrant or probable cause, Nichols was escorted to the restroom under constant supervision, with the deputy remaining present—a clear unreasonable seizure without probable cause.  People in the hallway looked on this spectacle with confusion.  Obviously, Casey arranged for this charade.  Casey directly benefitted from the fear and intimidation being imposed on Nichols, who knew too much about the pump-and-dumps and filed a brief with information that the SEC was picking up on.  Casey had clear motive and opportunity.

26.     Casey's agents, including Brandon Fuqua, presented testimony under Casey's direction and control.  When Fuqua initially testified that portions of the Jinsun brief were irrelevant, Casey's agent visibly coached him to alter his response.

27.     Plaintiff Nichols invoked his Fifth Amendment privilege against self-incrimination, prompting malicious attacks from Casey's agents for exercising this right including commentary and criticism for invoking that right.

28.     At the hearing's conclusion, Amir Mireskandari was acquitted of contempt entirely, but the court announced its intent to impose 30 days' jail time on Nichols. The proceedings as to Plaintiff Nichols were reset for March 22, 2024, where they were ultimately stayed and/or held in abeyance.

29.     Casey's malice was evident: the contempt pursuit was a sham to intimidate witnesses and counsel amid his pump-and-dump operations, including the Wang & Lee scheme

where trading volume spiked to 38 million shares on November 13, 2023 (Yahoo Finance, July 3, 2024), later drawing regulatory scrutiny leading to delisting concerns by June 2025.

30.     On August 9, 2024, the SEC filed its complaint against Casey, substantiating the very statements in the Jinsun brief as true and detailing his orchestration of pump-and-dump schemes since 2012, including LuxeYard. Armed with this vindication, Plaintiff Nichols's counsel moved to vacate the show-cause order on August 14, 2024. Undeterred, Casey caused another baseless show-cause application to be filed on August 28, 2024, now targeting Plaintiff Nichols, his client, and Nichols's counsel Lloyd E. Kelley—escalating the intimidation sphere. This was set for September 9, 2024, but quietly removed from the court's calendar.

31.     In a suspicious turn, on September 9, 2024, Casey's agents informed the Dallas court that Casey had died on September 1, 2024, without affidavit, death certificate, or explanation of authority to proceed. Yet, those same agents appeared in the Fifth Court of Appeals on October 23, 2025, arguing to try to save the speech-restrictive injunction against Plaintiff's affiliates. Tabitha Casey was later appointed estate administrator. Plaintiff doubts the death's veracity given the parallels to fraudsters' evasion tactics and suspicious timing of Casey's death relative to both the actions of the SEC and Casey's sudden estate planning activities immediately before the alleged death.

32.     Casey, as the driving force, conspired with state actors by exploiting judicial processes as a private "prosecutor," depriving Plaintiff of rights under color of law.

33.     *See Guerra v. Castillo*, 82 F.4th 278, 286 (5th Cir. 2023) (liable under § 1983 for supplying false information to initiate baseless prosecution).

## IV. CLAIMS FOR RELIEF

8

### COUNT 1 - DEPRIVATION OF CIVIL RIGHTS UNDER COLOR OF STATE LAW IN VIOLATION OF 42 U.S.C. § 1983

34.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

35.    Defendant used the civil court system to obtain an illegal injunction prohibiting future speech of Amir Mireskandari which was so broad it was used to try to police Amir's lawyers from speaking or even filing briefs that criticize Defendant in any court.

36.    The law does not require that Defendants be an officer of the State.  It is enough that he is a willful participant in joint action with the State or its agents.  *Adickes v. S. H. Kress & Co.,* 398 U. S. 144, 398 U. S. 152 (1970); *United States v. Price,* 383 U. S. 787, 383 U. S. 794 (1966).

37.    Defendant acted under color of state law. Defendant Casey, both directly and through his controlled agents, filed a show-cause application supported by false affidavits he caused or ratified, initiating contempt proceedings and effectively wielding state judicial power as a private prosecutor to deprive Plaintiff of constitutional rights.

38.    Defendant arranged for and intentionally caused the arrest of Plaintiff.

39.    Defendant intentionally caused a malicious, groundless, retaliatory criminal prosecution of Plaintiff.  In fact, given the unique "injunction" Defendant obtained, Defendant even stepped into the role of prosecutor in this matter and used his lawyers to do his bidding as a state actor.

40.    Defendant caused his agents to coach witnesses on the stand.

41.    Defendant caused his agents to comment on and publicly malign Plaintiff in open court about invoking his 5th Amendment right to not testify.

42.    Defendant's actions deprived Plaintiff of rights secured by the Constitution or laws of the United States. During the February 27, 2024, hearing, Plaintiff was arrested, detained, separated from counsel, searched, and subjected to due process and speech restraints without basis, violating his Fourth, Fifth, Sixth, and First Amendment rights.

43.    The show-cause application contained no probable cause, resting on perjurious affidavits falsified at Casey's direction.  The SEC's August 9, 2024, complaint vindicated the brief's truthful statements, confirming the proceedings' malicious sham.

44.    Defendant acted with malice. Casey's actions stemmed from animosity from over a decade of litigation, hatred for exposure of his pump-and-dump schemes, and self-preservation amid SEC probes—motives he ratified by directing the false affidavits and prosecutions.

45.    Plaintiff suffered damages, including emotional distress, reputational harm, loss of liberty, and legal fees defending the baseless proceedings.

### Count 2 - Fourth Amendment Violation - Unreasonable Search and Seizure

46.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

47.    Defendant acted under color of state law. Defendant Casey caused the filing of a show-cause application via false affidavits he directed, leveraging state processes to initiate contempt and act as prosecutor.

48.    Plaintiff was subjected to a search or seizure. On February 27, 2024, Plaintiff was arrested and detained upon courtroom arrival without Miranda warnings, confined between armed deputies, and subjected to a public pat-down and escorted supervision without cause.

49.     The search or seizure was unreasonable. No probable cause existed, as the application and affidavits were demonstrably false, fabricated by Casey to silence exposure of his fraud.

50.     Defendant was responsible for the violation. Casey initiated and directed the proceedings through false affidavits, causing the unreasonable seizure.

### COUNT 3 - SIXTH AMENDMENT VIOLATION - RIGHT TO COUNSEL

51.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

52.     Defendant acted under color of state law. Defendant Casey caused the show-cause filing via false affidavits, exploiting state power as prosecutor.

53.     Plaintiff was denied the right to counsel. Plaintiff was separated from counsel during the critical contempt hearing, unable to confer on testimony or exhibits, with recesses requiring escorted, monitored consultations under guard—impairing cross-examination and defense.

54.     The denial occurred during a critical stage of proceedings. The hearing risked 30 days' incarceration (or more), constituting a liberty-depriving critical stage.

55.     Defendant was responsible for the violation. Casey directed the false affidavits and proceedings, causing the denial.   Casey arranged for the arrest that day.

### COUNT 4 - FIFTH AMENDMENT VIOLATION - DUE PROCESS

56.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

57.     Defendant acted under color of state law. Defendant Casey caused the show-cause filing via false affidavits, acting as prosecutor under state authority.

58.     Plaintiff was deprived of life, liberty, or property. Plaintiff was detained and threatened with jail without Miranda or protections, suffering liberty loss.

59.     The deprivation occurred without due process of law. Proceedings launched on perjurious affidavits lacked basis; Casey's agents attacked Plaintiff's Fifth Amendment invocation, denying fair process.

60.     Defendant was responsible for the violation. Casey directed the false affidavits, causing the deprivation.

### COUNT 5 - FIRST AMENDMENT VIOLATION – RETALIATION AND PRIOR RESTRAINT ON FREE SPEECH

61.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

62.     Plaintiff engaged in protected speech. Plaintiff's e-filing of the Jinsun brief addressed matters of public concern—securities fraud in publicly traded companies affecting nationwide investors—and constituted petitioning for redress in a civil dispute. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011).

63.     Defendant acted under color of state law. Defendant Casey retaliated via false affidavits and show-cause, exploiting state processes to restrain speech.

64.     Plaintiff's protected speech was restricted. Casey obtained an improper injunction via misrepresentations (dissolved on appeal, violating *Kinney v. Barnes*, 669 S.W.2d 363 (Tex. 1984)) and used it to pursue contempt, chilling truthful discourse later vindicated by the SEC.

65.     The restriction constituted an impermissible prior restraint. The injunction and contempt targeted future and protected speech without basis, punishing petitioning on public fraud.

66.     Defendant was responsible for the violation. Casey directed the misrepresentations and false affidavits, imposing the restraint.

## COUNT 6 – NO QUALIFIED IMMUNITY

67.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

68.     As a private actor conspiring with state officials via false affidavits to abuse judicial process, Casey is not entitled to qualified immunity. His violations were objectively unreasonable, violating clearly established rights against baseless seizure, denial of counsel, due process deprivations, and speech retaliation. Casey was the driving force, continuously updated, and directly supplied or ratified the falsity.

## COUNT 7 – SUPERVISOR LIABILITY

69.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

70.     Casey, as principal, supervised and controlled his agents' actions, setting the policy of malicious prosecution via false affidavits to silence critics. All violations are imputed to him as ringleader of the conspiracy.

71.     Casey instructed law enforcement to make arrests.

72.     Casey is a ring leader of the pump-and-dumps and the litigation that ensued.   He has always been in control of both the stock transactions, the marketing, and the subsequent lawfare.

73.     Casey initiated the legal proceedings to obtain a wildly inappropriate broad injunction prohibiting future speech.   In that endeavor, Casey instructed his attorneys to misrepresent authority to the trial court.

74.     Once the injunction was obtained, Casey used it initiate proceedings and arrests.

75.     This is consistent with standard policy implemented by Casey for his lawyers, team, affiliates, agents, etc. in the wake of pump-and-dumps.  Sue, harass, and ask for sanctions at any cost.  Even with perjury if needed.

76.     Casey was fully in charge and his lawyers and the court personnel were following his orders.

## COUNT 8 – FALSE IMPRISONMENT

77.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

78.     Defendant intentionally caused the detention of Plaintiff by filing a false affidavit. Defendant also coordinated with law enforcement to confine Plaintiff.

79.     Plaintiff did not consent to his arrest, seizure, or confinement.

80.     Plaintiff was separated, restrained, arrested, and otherwise not free to go.  He was physically separated and guarded by men with guns.   Plaintiff was moved to a specific open area of the courtroom, which was not used for seating or by lawyers or the parties, where he was held by threat of force.

81.     The detention was not legally justified.  Defendant knew the affidavits and arrest were based on false pretenses.

82.     Defendant filed affidavits containing false information to be presented to a court and to bailiffs to purposefully cause Defendant to be seized.

### COUNT 9 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

83.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

84.     Defendant desired that Plaintiff be harmed, specifically, arrested and prosecuted under false pretenses.   Specifically, Defendant wanted to punish and intimidate Plaintiff for representing Mireskandari, whom Defendant hates.  Also, Defendant wanted to intimidate Plaintiff for filing documents which contain relevant information exposing past and ongoing pump-and-dumps with millions of dollars at stake.

85.     The conduct was extreme and outrageous.  This type of event is almost unheard of and created a spectacle that day.   It is extremely brazen to cause the arrest of your opposing party's lawyer by filing false affidavits.  It is extreme and outrageous to instruct court bailiffs to carry out an arrest in open court.

86.     No reasonable person should be forced to endure public embarrassment like that.  Plaintiff spent his entire life and law career building up his reputation as a lawyer and an officer of the court only to be shamefully paraded around in civil court like a criminal.   This was done in front of law clerks, court staff, other lawyers, other parties, the judge, etc.

87.     The emotional distress suffered by Plaintiff was severe.   It impaired his ability to function at his job for several months.  It also affected his ability to be a father and husband due to the stress and severe emotional distress.

## COUNT 10 - ASSAULT

88.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

89.     Filing a false affidavit and instructing law enforcement to perform an arrest are both intentional acts.

90.     The seizure and arrest in this case caused Plaintiff to fear bodily injury, and subjected Plaintiff to uninvited and unwarranted touching.

91.     The arrest and seizure, and the pat town, and the escort to the restroom, and the physical separation with armed guards standing by, all and separately constitute physical contact that is offensive and provocative.  All and separately also constitute reasonable fear of bodily injury, especially since the guards had firearms holstered and visible to Plaintiff in case of a 'wrong move.'

## COUNT 11 – MALICIOUS PROSECUTION

92.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

93.     The false affidavits and false petition for show-cause initiated legal proceedings against Plaintiff.   Defendant also made misrepresentations to the trial court to obtain an improper

and unconstitutional injunction prohibiting future speech, which was so overbroad it could be used to prosecute *civil* opponents *as criminals* for merely participating in *civil* litigation.

94.     These proceedings were instituted by and at the assistance of Casey, and with Casey's aid and cooperation. Casey instructed his lawyers to file affidavits stating the pump and dumps were false, and that the purpose of a brief filed in another case was somehow willful disregard of a Court's order. Casey absolutely knew these claims were untrue.

95.     Casey acted with malice to intimidate Plaintiff who was acting as a lawyer for Mireskandari. Also, the initiation of the proceedings for the purpose of protecting an ongoing securities law violation is further proof of malice.

96.     Plaintiff received a favorable termination because he was never found guilty, and the injunction under which the prosecution was commenced was ultimately dissolved and terminated.

97.     Plaintiff suffered special damages. Plaintiff's person and property was the subject of search and seizure as described in detail in this complaint. Plaintiff suffered sequestration and physical apprehension. These special damages are in addition to inconvenience, embarrassment, attorney's fees, and other damages. These special damages are in addition to general damages.

## COUNT 12 – AIDING AND ABETTING STATE ACTORS' DEPRIVATION OF CONSTITUTIONAL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983

98.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

99.     Defendant Casey, individually and through his agents and attorneys acting under his direction and control, aided and abetted state actors, including Dallas County bailiffs, court

security personnel, and judicial officers of the Dallas County court, in depriving Plaintiff of clearly established rights secured by the Fourth, Fifth, Sixth, and First Amendments to the United States Constitution.

100.    Defendant substantially assisted the constitutional violations by:

(a) knowingly preparing, ratifying, and causing to be filed false and perjurious affidavits that he knew contained material misrepresentations concerning Plaintiff's authorship, knowledge, and alleged violation of a prior injunction;

(b) supplying those false affidavits to state court personnel and bailiffs with the specific intent and knowledge that they would be relied upon to justify Plaintiff's warrantless arrest, detention, public pat-down search, and separation from counsel upon his arrival at the February 27, 2024 contempt hearing;

(c) pre-arranging with court personnel and law enforcement for additional armed bailiffs to be present in the courtroom on February 27, 2024 for the express purpose of seizing and detaining Plaintiff and his client immediately upon entry;

(d) instructing and coordinating with state actors to ensure Plaintiff was physically confined between armed deputies, denied private access to counsel during a critical stage, subjected to escorted and monitored restroom visits, and treated as a presumptive criminal in open court; and

(e) directing his agents to continue the contempt prosecution even after the SEC's August 9, 2024 complaint conclusively established the truthfulness of the statements Defendant had falsely claimed were contemptuous.

101.    Defendant knew that his substantial assistance (providing knowingly false information and orchestrating the logistics of the arrest) would cause state actors to deprive Plaintiff of liberty without probable cause, deny him the effective assistance of counsel, subject him to unreasonable search and seizure, and retaliate against his protected First Amendment activity.  Defendant rendered that assistance with the specific intent to facilitate the constitutional deprivations described throughout this Complaint.

102.    As a direct and proximate result of Defendant's aiding and abetting of state actors under color of law, Plaintiff suffered deprivation of his constitutional rights and sustained damages as set forth herein.

### COUNT 13 – CONSPIRACY WITH STATE ACTORS TO DEPRIVE CONSTITUTIONAL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983

103.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

104.    There is no good reason in law, logic, or policy for conferring immunity on private persons who persuaded the immune party to exercise jurisdiction corruptly.

105.    Defendant Casey, individually and through his agents and attorneys acting under his direction and control, entered into an agreement or meeting of the minds with state actors including Dallas County bailiffs, court security personnel, clerks, and judicial officers of the Dallas County court to deprive Plaintiff of his clearly established rights under the Fourth, Fifth, Sixth, and First Amendments to the United States Constitution.

106.    The objects of the conspiracy were to (i) punish and silence Plaintiff for protected speech exposing Defendant's pump-and-dump securities fraud schemes, (ii) intimidate Plaintiff and his client through the spectacle of a public courtroom arrest, and (iii) deny Plaintiff liberty and the effective assistance of counsel without due process or probable cause.

107.    In furtherance of the conspiracy, Defendant and his state-actor co-conspirators committed the following overt acts, among others:

(a) Defendant supplied knowingly false affidavits to state court personnel and bailiffs;

(b) Defendant, directly or through agents, communicated and coordinated with court administration and security personnel to schedule and arrange for extra

armed bailiffs to be present on February 27, 2024 specifically to arrest and detain Plaintiff upon his arrival;

(c) Defendant instructed state actors to separate Plaintiff from counsel, confine him between armed deputies, deny him private consultation, and subject him to a public pat-down and escorted restroom supervision;

(d) state actors, acting pursuant to Defendant's instructions and false submissions, seized, detained, searched, and publicly humiliated Plaintiff in open court; and

(e) Defendant and his agents continued to press the baseless contempt proceeding even after the SEC vindicated Plaintiff's speech, thereby prolonging the chilling effect on Plaintiff's First Amendment rights.

108.    As a direct and proximate result of this conspiracy between Defendant Casey and state actors acting under color of law, Plaintiff was deprived of his constitutional rights and sustained damages as set forth herein.

## V. PRAYER

WHEREFORE, Plaintiff prays that this Honorable Court enter a judgment in favor of Plaintiff for damages including compensatory damages, out-of-pocket losses, medical bills, impairment of reputation, personal humiliation, lost or diminished earnings, financial, psychological, and physical injuries cased by the wrongful conduct, nominal damages, presumed damages, punitive damages, attorneys fees and costs, pre-judgment and post-judgment interest, and all such other relief as is equitable and just under the circumstances.

Respectfully Submitted,

LLOYD E. KELLEY

*/s/ Lloyd E. Kelley*
Lloyd E. Kelley
State Bar No. 11203180
2726 Bissonnet Ste 240 PMB 12
Houston, Texas 77005
Telephone: 281-492-7766
Telecopier: 281-652-5973
***ATTORNEY FOR PLAINTIFF***